**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| RALPH W. ARTHUR, *Plaintiff*, | ) ) ) |
| v. | ) ) ) |
| PET DAIRY, and LAND-O-SUN DAIRIES LLC, *Defendants*. | ) ) ) ) ) |

CASE NO. 6:11-CV-00042

<u>MEMORANDUM OPINION</u>

Plaintiff Ralph W. Arthur ("Plaintiff") alleges age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, in his suit against Defendant Land-O-Sun Dairies, LLC d/b/a Pet Dairy ("Defendant"). This matter is before the court upon the motion for summary judgment filed by Defendant on September 16, 2013 and argued before the Court on November 14, 2013. For the following reasons, I will grant Defendant's motion.

**I. BACKGROUND**

Ralph W. Arthur was employed by Pet Dairy in 1992 or 1993 for approximately six months. In or around January 2003, Arthur (then 57 years old) was subsequently rehired by Pet Dairy to work as a route sales driver out of Lynchburg, VA. Arthur's job duties involved delivering milk to Lynchburg customers, including eighteen of the Lynchburg City Schools. Mike Reynolds, the current plant manager and Arthur's supervisor, was hired in 2005. According to Plaintiff, when Reynolds first met Arthur, he asked Arthur his age, and when Arthur replied, Reynolds said, "you are too old to be here and I'm going to get rid of you . . . you're just too old to be here." Plaintiff claims that in the interim period between this initial statement and his

ultimate termination, Reynolds repeatedly harassed him, told him he should retire, and left him 50 to 60 sticky notes making various accusations. Plaintiff argues that Reynolds was consistently out to get him and that ultimately, on December 17, 2009, nearly five years after the initial statements, Reynolds made good on his age-motivated threats and terminated him.

Defendant suggests Arthur had numerous performance issues while working for Pet Dairy. The first problem was reckless operation of Pet Dairy's vehicles. Primarily, though, Defendant asserts that Arthur's largest customer, the Lynchburg City Schools ("The Schools"), complained regularly about his performance. Meryl Smith, Director of School Nutrition, stated that Arthur "was performing his job responsibilities at breakneck speed, to the point that it created a safety hazard." She elaborated that managers expressed actual concern that they would be hit by Arthur, who they said was "not going to slow down." Defendant asserts that after multiple unsuccessful attempts by Reynolds to notify Arthur about the problems, the issue intensified when Smith issued a memorandum on December 4, 2009, stating that the Schools would no longer allow Arthur to make deliveries to them. According to Defendant, it was these performance issues which led to Arthur's termination on December 17, 2009.

Plaintiff claims that all of Defendant's accusations about his reckless driving are unfounded, that Meryl Smith was "in Reynolds's pocket," and ultimately that all the performance issues were simply pretext to fire Arthur because Reynolds disapproved of him and his age.

The original complaint in this case was filed by Plaintiff on October 5, 2011 and answered by Defendant on December 13, 2011. The case was in discovery for a substantial amount of time before the present motion for summary judgment was filed on September 16,

2013. The motion was fully briefed, and oral argument was heard before the Court on November 14, 2013.

**II. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc,* 763 F.2d 604, 610 (4th Cir. 1985).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' … an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but … [must] by affidavits or as otherwise provided in

… [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Anderson*, 477 U.S. at 242). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317).

The Age Discrimination in Employment Act (ADEA) prohibits an employer, as defined in the ADEA, from terminating anyone because of their age. 29 U.S.C. § 623(a)(1). To establish a claim for age discrimination under the ADEA, a plaintiff must prove by a preponderance of the evidence that age "was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services, Inc., 557* U.S. 167, 180 (2009). There are two ways in which a plaintiff may prove this and make out a claim for age discrimination under the ADEA. First, a plaintiff may demonstrate "through direct or circumstantial evidence that … age discrimination motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). "The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id*. This is the familiar *McDonnell Douglas* burden-shifting approach established for Title VII employment discrimination cases. *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973); *see also Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (applying *McDonnell Douglas* in the context of an ADEA claim).

### III. Discussion

As this Circuit has indicated, "[g]enerally speaking, a plaintiff may avert summary judgment and establish a claim for intentional sex or age discrimination through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). Thus, I will analyze each of the two avenues to determine if Plaintiff has established a viable claim of age discrimination.

#### A. Direct or Circumstantial Evidence

"First, a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that sex or age discrimination motivated the employer's adverse employment discrimination." *Hill*, 354 F.3d at 284.

Generally, "plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001). Direct evidence comprises "statements that both reflect directly the allegedly discriminatory attitude and that bear directly on the contested . . . decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006). In other words, it can be evidence that the employer "announced, or admitted, or otherwise unmistakably indicated that age was a determining factor" in the employment action. *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982).

There is also a timing requirement for those statements. "[W]hile isolated statements can constitute direct evidence of discrimination, the statements must be contemporaneous to the

adverse employment action." *McCray v. Pee Dee Regional Transportation Auth.*, 263 Fed. Appx. 301, 306, 2008 U.S. App. LEXIS 2625, at *13 (4th Cir. 2008) (citing *Birkbeck v. Marvel Lightning Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994) (statement made over two years before discharge was too remote in time to serve as evidence of age discrimination).

Here, Plaintiff contends that "the first day [he] ever met [Reynolds]," Reynolds told him he was "too old to be here and [Reynold was] going to get rid of [him]," and repeated "you're just too old to be here." Pl.'s Resp. to Def.'s Mot. for Summ. J. 2 (docket no. 70). The statements do appear to be reflecting a discriminatory attitude, and they also appear to bear on the decision to terminate Plaintiff. Even if those statements would otherwise be direct evidence of discrimination, however, they were not made contemporaneous to the adverse employment action. In fact, Plaintiff himself acknowledges that "Reynolds fired Arthur *five years* later on December 17, 2009." *Id.* (emphasis added). As the case law in this Circuit clearly demonstrates, a statement made over two years before termination, let alone five years, is too remote in time to serve as direct evidence. *Birkbeck*, 30 F.3d at 511-512. Thus, the statement by Reynolds to Arthur upon first meeting him is not direct evidence of age discrimination because of the lengthy delay between the statement and Arthur's termination.

During oral argument, counsel for Plaintiff claimed that Arthur was threatened two to three times a week following this initial statement, with Reynolds making disparaging comments about Arthur's age every time. Counsel for Plaintiff stated that the evidence for this could be found on pages 34, 37, and 92 of Arthur's deposition. Peculiarly, page 34 deals with Arthur's earlier EEOC charge and page 37 establishes basic facts; neither has anything to do with threats or disparaging remarks, let alone threats or disparaging remarks related to age. Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 1 10 (docket no. 70). Even more incredibly, page 92 has Arthur

squarely admitting in response to a directly on point question that the threats he alleges he received two to three times a week "didn't have *anything* to do with [his] age." *Id.* at 24 (emphasis added). In other words, Plaintiff's own deposition says *the exact opposite* of what Plaintiff's counsel assured the Court it said. Setting aside this inconsistency, it is obvious there is no evidence to support Plaintiff's claim of frequent age-related threats.

Plaintiff suggests that "Reynolds also left sticky notes for Arthur making various accusations and threatening to get rid of him," alleging that "[t]o be sure, Arthur received approximately 50 to 60 [notes] over the five years working under Mike Reynolds." Pl.'s Resp. to Def.'s Mot. for Summ. J. 2 n.3 (docket no. 70). Plaintiff supports this allegation with the declaration of Greg Wright, another former employee, who claims that "Reynolds was sneaky and would threaten people with notes and verbal abuse." Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 2 1 (docket no. 70). However, it is important to note that Plaintiff stated in his deposition that only 17 of the notes he received were negative or harassing. Def.'s Reply to Pl.'s Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J. Ex. 2 150-51 (docket no. 72). More significantly, Plaintiff also repeatedly admitted under questioning during his deposition that the notes said nothing about age and merely gave him negative feedback or, at worst, threatened to fire him for other reasons. *Id.* at 92-95, 120. Thus, Plaintiff's evidence suggests, construed in its most favorable light, that Reynolds was a difficult boss who was giving Arthur a hard time. It does not, however, provide any direct or circumstantial evidence to support a claim of age discrimination.

Plaintiff's last major effort to produce direct or circumstantial evidence of age discrimination involves the presentation of declarations from two other coworkers. I first note that "the opinions of . . . co-workers as to the quality of [plaintiff's] work are . . . 'close to irrelevant.'" *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quoting *Conkwright*

*v. Westinghouse Elec. Corp.*, 933 F.2d 231, 235 (4th Cir. 1991)). Strangely, Plaintiff's own response brief attacks an argument made by Defendant by asserting that "defendant offers lamely the opinion of a few of Arthur's co-workers," when in fact Plaintiff does the very same thing in an attempt to avoid summary judgment. Pl.'s Resp. to Def.'s Mot. for Summ. J. 19 (docket no. 70). Even setting aside this inconsistency, and acknowledging that the declarations Plaintiff relies upon contain more than co-worker opinion's about Arthur's performance, the declarations do not provide the evidence Plaintiff needs. Judith Hickman, who used to fill out milk orders for Pet Dairy, claims that "Reynolds gave Arthur and [Greg] Wright a hard time" and that Reynolds "told Arthur that he was too old to be working." Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 3 1 (docket no. 70). The first of those statements merely corroborates Plaintiff's evidence that Reynolds was a difficult boss to get along with; the latter statement, without any corroborating date whatsoever offered to validate it, cannot possibly be seen as "contemporaneous to the adverse employment action." *McCray*, 263 Fed. Appx. at 306. The second declaration, from a former employee named Clarence Burton, alleges that Reynolds called the drivers "dumb asses" and did not offer Burton fewer hours in light of a heart condition. Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 4 1 (docket no. 70). While the allegations from Burton's declaration suggest behavior that is both crude and callous, they do not provide direct or circumstantial evidence that Defendant was discriminating on the basis of age.

Thus, I find that Plaintiff has failed to produce the kind of "direct or circumstantial evidence that sex or age discrimination motivated the employer's adverse employment discrimination" required to avert summary judgment. *Hill*, 354 F.3d at 284. All Plaintiff has presented are isolated statements, some too distant in time from Arthur's termination and some allegedly made at an indeterminate time, along with statements from other workers, which

possess minimal probative value, that Reynolds was disagreeable. Notably, the only evidence Plaintiff's counsel able to point the Court to during oral argument was deposition testimony which thoroughly undermines Plaintiff's claims. While the statements and actions attributed to Reynolds by Plaintiff are not commendable, they are also not evidence of age discrimination.

### B. Prima Facie Case

According to the law of this Circuit, "[t]he second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

In order to proceed under this method, the Plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In order to establish a prima facie case of discrimination under Title VII, a Plaintiff must show (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that at the time of the adverse employment action he was performing at a level that met his employer's legitimate job expectations; and (4) that the position remained open to or was filled by similarly qualified applicants outside the protected class. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993); *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 607 (4th Cir. 1999); *see also Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (applying *McDonnell Douglas* in the context of an ADEA claim).

Once a plaintiff establishes a prima facie case of age discrimination, the burden shifts back to the employer to offer a legitimate, non-discriminatory reason for the termination. *Hill*, 354 F.3d at 285. Following that, the burden shifts back to the plaintiff to prove the employer's

stated reasons "were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)).

Here, there is no dispute that Arthur was 64, and thus a member of a protected class, and that he faced an adverse employment action when he was terminated on December 17, 2009. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 18 (docket no. 70) (presenting Plaintiff's age). Defendant's counsel during oral argument did not contest these first two factors.

The major dispute, and what in my view is ultimately dispositive in the case, is the third *McDonnell Douglas* factor. According to Defendant, "there is no genuine issue of material fact as to Arthur's repeated failure to meet Pet Dairy's legitimate performance expectations." *Id.* Plaintiff naturally disagrees. But Plaintiff is unable to produce evidence to refute Defendant's claims. Plaintiff first asserts that "Arthur has a four year degree," "four similar jobs delivering goods to stores and schools," and "25 years of sales experience," all of which indicate his qualifications for the job. Pl.'s Resp. to Def.'s Mot. for Summ. J. 18-19 (docket no. 70). But Defendant does not contest that Arthur was qualified for the job; indeed, Defendant rehired Arthur in 2003, indicating their agreement with Plaintiff's assessment of his qualifications.

The issue according to Defendant is not with Arthur's qualifications, but rather with his performance. As Defendant notes, Plaintiff stated that "[D]efendant's evidence is limited to five of the eighteen schools – leaving thirteen who have expressed no concern whatsoever with [his] performance." Pl.'s Resp. to Def.'s Mot. for Summ. J. 6-7 (docket no. 70). As Defendant correctly points out, this means that Plaintiff concedes that 28% of Arthur's customers were dissatisfied with his performance. Furthermore, the Schools are not each an individual customer; they all collectively are one customer, and Meryl Smith was the director who spoke for that customer. Defendant has shown evidence that Smith complained that Arthur did "everything at

break neck speed" and that he tended to be "abrupt and rude" and did not "accept any personal responsibility for a problem." Def.'s Mot. for Summ. J. 9 (docket no. 66). Defendant has shown that Smith refused to allow Arthur to service "*any* of the Lynchburg City School accounts," and that this limited Arthur's usefulness to his employer, ultimately leading to his termination. *Id.* (emphasis added). It is, of course, entirely legitimate for an employer to terminate an at-will employee because they are no longer capable of serving their largest customer.

Plaintiff's counsel represented to the Court during oral argument that Reynolds went to Smith to conspire to get rid of Arthur *before* Smith had any complaints about Arthur's performance. However, the record clearly demonstrates that Smith had numerous complaints from various managers long before Reynolds initiated any communication with her about Arthur. In Smith's deposition, she states that she "had been in contact with [Reynolds] occasionally on and off, expressing [her] concern that things were not getting better, and expressing to him that [she] was frustrated that they were not getting better." Def.'s Mot. for Summ. J. Ex. D 12-13 (docket no. 65). Only following these numerous complaints did Reynolds say "I would like for you to put your concerns into writing." *Id.* at 13. These statements by Smith, and the rest of the record, show that Reynolds was merely responding to customer complaints rather than instigating anything.

Plaintiff, perhaps sensing that Smith's statements are damaging, attacks her credibility, making the rather striking claim that "Reynolds plainly had Smith in his pocket." Pl.'s Resp. to Def.'s Mot. for Summ. J. 8 (docket no. 70). Of course, even putting aside Defendant's suggestion that this character attack on Smith is defamatory, it obviously the kind of unsupported speculation that cannot serve to create a genuine issue of material fact. *See Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create

a genuine issue of material fact."). Although Plaintiff contends that this allegation "will be shown," Plaintiff plainly fails to do so with any evidence. Pl.'s Resp. to Def.'s Mot. for Summ. J. 8 (docket no. 70).

Plaintiff has also produced evidence that "employees from seven schools have specifically stated that they had no issue with Arthur's performance." Pl.'s Resp. to Def.'s Mot. for Summ. J. 7 n. 10 (docket no. 70). *See, e.g.,* Pl.'s Resp. to Def.'s Mot. for Summ. J Ex. 9 4 (docket no. 70) (Angela Carter claiming that Arthur is a [v]ery nice, intelligent man" who "was working fine, no problem"); Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 12 (docket no. 70) (Pearl P. Smith stating that "I had no problems with Mr. Arthur. He had no problems with me"). But Plaintiff must demonstrate that the complaints which served as the basis for termination were "dishonest or not the real reason for [his] termination," not simply "dispute . . . the merits of [the] evaluations." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). Here, as in that case, Plaintiff has merely disputed the merits of the allegations by presenting competing evaluations. The testimony of some school employees that Plaintiff was good at his job is completely irrelevant when there is also uncontested evidence that others, particularly those with influence like Meryl Smith, complained to Defendant about Plaintiff's performance. Furthermore, it was Smith, and not the individuals Plaintiff cites to, who had the authority to speak on behalf of the Schools. When she demonstrated displeasure with Arthur in her December 4 memorandum, she spoke with that authority for the Schools as a whole, and negated anything positive lower level employees might have thought.

Unlike in the recent opinion *Harris v. Powhatan County School Board*, No. 12-2091 (4th Cir. 2013), where Plaintiff made out a prima facie case of age discrimination and the Court then discounted as pretext the Defendant's explanation for the firing, I find in this case that Plaintiff

[12]

has failed to establish a prima facie case of age discrimination, because the record plainly shows that Plaintiff had work performance issues. This case is thus more akin to recent decisions that have granted summary judgment because of failure to meet the employer's legitimate job expectations. *See, e.g, Hill v. Southeastern Freight Lines, Inc.*, 523 Fed. Appx. 213, 216 (4th Cir. 2013) (finding that "evidence other than . . . self-serving conclusions and the impressions of one of his coworkers" is required to avoid summary judgment); *McKnight v. Ridgecrest Health Group, LLC*, 2013 U.S. Dist. LEXIS 6301, at *13 (W.D. Va. 2013) (stating that "[n]either [Plaintiff's] own assessment of her performance nor the assessment of her coworker are particularly relevant. The key inquiry is whether, in the eyes of the decision-makers who terminated her, [Plaintiff] was performing in line with [the employer's] reasonable expectations"). Because there is no dispute of material fact that Plaintiff failed to do so, it is therefore unnecessary to analyze the fourth factor of the *McDonnell Douglas* framework. It is also unnecessary to analyze whether Defendant's proffered reason for the termination was pretextual, which would only become relevant had Plaintiff made out a prima facie case.

Simply put, Plaintiff fails to present colorable direct or circumstantial evidence of age discrimination. Plaintiff is also unable to demonstrate that he met Defendant's legitimate performance expectations, and so he cannot make out a prima facie case of age discrimination under *McDonell Douglas*. Plaintiff thus fails in either of the two possible ways show that age "was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 180 (2009). Summary judgment is therefore appropriate, and Defendant's motion is **GRANTED**.

## IV. CONCLUSION

Thus, because I find that Plaintiff has failed to either produce direct or circumstantial evidence that age discrimination was a motivating factor in his termination or to make out a prima facie case of discrimination, Defendant's motion for summary judgment will be granted. An appropriate order follows.

Entered this 19th day of November, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE